UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-mj-81 (KMM/SGE)

UNITED STATES OF AMERICA,

Plaintiff,

v.

PAUL ERVIN JOHNSON,

Defendant.

**GOVERNMENT'S SUR-REPLY TO ARGUMENTS ON DEFENDANT'S MOTION TO STRIKE APPEARANCE OF GOVERNMENT'S COUNSEL**

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, Kristian Weir. Assistant United States Attorney, and Michael Hakes-Rodriguez, Special Assistant United States Attorney ("SAUSA"), hereby submits the Governments sur-reply to Defendant's Motion to Strike Appearance of Governments Counsel. Because Congress has unambiguously authorized the appointment of judge advocate attorneys as civilian criminal attorneys, and the SAUSAs are detailed to the Department of Justice a full-time basis to perform their functions in an exclusively civilian capacity and are supervised in this role entirely by civilian supervisors, and Mr. Johnson's arguments fail.

**LEGAL STANDARD**

Courts interpret statutory language "according to its 'ordinary, contemporary, common meaning.'" *Southwest Airlines Co. v. Saxon*, 142 S. Ct.

1

1783, 1788 (2022) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979). Where this ordinary meaning is unambiguous, "the judicial inquiry is complete." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2020). The Supreme Court "has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end." *Bostock v. Clayton Cty*, 140 S. Ct. 1731, 1749 (2020). "The Court may not 'replace the actual text with speculation as to Congress' intent.' Rather, the Court 'will presume more modestly that 'the legislature says what it means and means what it says.'" *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496-97 (2022) (citations omitted). Similarly, "it is a fundamental principle that 'absent provision[s] cannot be supplied by the courts.'" *Rotkiske v. Klemm*, 140 S. Ct. 355, 360-61 (2019). It is the court's "duty to respect not only what Congress wrote, but as importantly, what it didn't write." *Virginia Uranium v. Warren*, 139 S. Ct. 1894, 1900 (2019).

The Eighth Circuit has, of course, abided by this oft-repeated axiom. "[W]hen the terms of a statute are unambiguous, judicial inquiry is complete." *United States v. Vig,* 167 F.3d 443, 448 (8th Cir. 1999). When "statutes are straightforward and clear, legislative history and policy arguments are at best interesting, at worst distracting and misleading, and in neither case

2

authoritative." *Northern States Power Co. v. United States*, 73 F.3d 764, 766 (8th Cir. 1996).

When reviewing multiple statutes, "the Court will 'regard each as effective'—unless Congress' intention to repeal is 'clear and manifest,' or the two laws are 'irreconcilable.' *Main Cmty. Health Options v. United States,* 140 S.Ct. 1308, 1323 (2020) (citing *Morton v. Mancari*, 417, U.S. 535, 550-51 (1974). Likewise, when reviewing "two Acts of Congress allegedly touching on the same topic, [the] Court is not at 'liberty to pick and choose among congressional enactments' and must instead strive 'to give effect to both.'" *Morton v. Mancari*, 417 U.S. 535, 551 (1974). A party who argues that two statutes cannot be harmonized bears the heavy burden of showing "a clearly expressed congressional intention" that one statute clearly repeals another. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995).

## ARGUMENT

I.    **CONGRESS HAS EXPRESSLY AUTHORIZED JAG ATTORNEYS TO SERVE AS SPECIAL ASSISTANT UNITED STATES ATTORNEYS**

**a. The statutes in question should be interpreted in concert.**

There are three statutes at play here. First, the PCA, which prohibits anyone from "willfully us[ing] any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to

execute the laws," "except in cases and under circumstances expressly authorized by the Constitution or Act of Congress." 18 U.S.C. § 1385. To determine whether the PCA applies, a court should not look at simple membership in "the Army, the Navy, the Marine Corps, the Air Force, or the Space Force" but instead focus on the *use* of a part of one of those services "as a posse comitatus or otherwise to execute the laws." 18 U.S.C. § 1385. Second, an Act of Congress expressly authorizes the Attorney General to appoint SAUSAs. 28 U.S.C. 543. Third, an Act of Congress expressly authorizes the detail of judge advocates to represent the United States in criminal matters. 10 U.S.C. § 806(d)(1).

Mr. Johnson's argument requires the Court to read these three statutes to contradict one another, contrary to Supreme Court precedent. *Morton v. Mancari*, 417 U.S. 535, 551 (1974) (holding that where "two Acts of Congress allegedly touch[] on the same topic, [the] Court is not at 'liberty to pick and choose among congressional enactments' and must instead strive 'to give effect to both.'")

The PCA's unambiguous language allows Congress to enact exceptions. Acts of Congress have created exceptions that allow judge advocates to be appointed as SAUSAs and to represent the civilian government in criminal matters. These are not contradictions. They are precisely the sort of

4

congressional exceptions anticipated by the language of the PCA. Mr. Johnson has failed to show "a clearly expressed congressional intention" that the PCA supersedes or repeals any of the others. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995). The Court should rather read these statutes as part of a consistent statutory scheme, as Congress intended.

**b. The statutes in question are unambiguous and should be interpreted according to their plain meaning alone.**

The parties agree that the 18 U.S.C. § 1385, the Posse Comitatus Act ("PCA") allows the detailing of members of a branch of the military where "expressly authorized" by an "Act of Congress." (Defendant's Reply, Doc. No. 43, p. 3). Defense's reply brief contends that no statute expressly authorizes the detailing of Judge Advocate General Corps ("JAGC") attorneys as Special Assistant United States Attorneys ("SAUSAs"). (Doc. No. 43). Not so. An Act of Congress expressly authorizes the Attorney General to appoint SAUSAs. 28 U.S.C. § 543. This statute contains no exceptions or limitations on the attorneys that may be appointed. *See, generally,* 28 U.S.C. § 543. Likewise, 10 U.S.C. § 973(b)(2)(B) unambiguously states that an officer of the armed forces "may hold or exercise the functions of a civil office in the Government of the United States…when assigned or detailed to that office or to perform those functions." Another Act of Congress further specifies that "A judge advocate

5

who is assigned or detailed to perform the functions of a civil office in the Government of the United States under Section 973(b)(2)(B) of this title may perform such duties as may be requested by the agency concerned, including representation of the United States in civil and criminal cases." 10 U.S.C. § 806(d)(1). This language is express and unambiguous. Defense counsel makes a conclusory claim that the language is not an express authorization of the use of judge advocates in the prosecution of civilian criminal matters. This is despite the plain language that judge advocates may be detailed to "represent the United States in civil and criminal cases." Defense fails to provide any authority or argument as to why the Court should not take those words at their plain meaning. The government respectfully request that the Court read these words according to their "ordinary, contemporary, common meaning," and deny Mr. Johnson's motion.

Defense invites the Court to do what the Supreme Court and the Eighth Circuit have repeatedly admonished Courts not to: that is, delve into the legislative history of the statute and review the intent behind the language as outlined by Amici. (Defendant's Reply, p. 4). While the analysis proposed by defense is undoubtedly interesting as an academic exercise, it is improper for judicial review of unambiguous text, as it is here. In fact, it is precisely the kind of extraneous inquiry that the Eighth Circuit found potentially

"distracting and misleading." *Northern States Power Co. v. United States*, 73 F.3d 764, 766 (8th Cir. 1996). Defense also urges the Court to violate another fundamental principle of construction and insert language that was not included in any of the statutes in question, namely that the "express authorization" in Section 806 is only valid where judge advocates are used for matters with a "military nexus." Defense fabricates this nexus requirement from whole cloth, not citing to statutory language, legal authority, or judicial gloss.

The government asks the Court not to ignore the Supreme Court's long-established holdings; rather, because the text of the statutes in question is unambiguous, let the inquiry end there. Further, the government asks the Court to "respect not only what Congress wrote, but as importantly, what they didn't write." *Virginia Uranium,* 139 S. Ct. at 1900. Congress could have easily written in the sort of nexus requirement that defense proposes but chose not to do so. The government submits that the Court should not add what Congress chose not to include. The government therefore respectfully requests that the Court refuse defense's invitation to unnecessary and improper analysis of legislative history and instead rely on the plain language of 10 U.S.C. § 806(d)(1) as an express exception to the PCA.

The Court would not be alone in doing so. While the Eighth Circuit has never considered the question of whether judge advocates may be appointed as SAUSAs on a criminal matter, the Fifth Circuit has. *United States v. Allred*, 867 F.2d 856, 870-71 (5th Cir. 1989). While this Fifth Circuit case is not binding on the Court, as the only appellate review of the question at hand, it is certainly instructive. In *Allred*, the Court held that the unambiguous language of 28 U.S.C. § 543 and 10 U.S.C. § 806(d)(1), taken in concert, create an express authorization for the appointment of JAG attorneys as SAUSAs. *Id.* at 871. Specifically, "[c]onsidering the Posse Comitatus Act's own indication that it should be interpreted in light of the co-existing statutory framework, it seems clear that [the judge advocate SAUSA's] participation in no way violates the Act's provisions." *Id.*

Defense, referring to the arguments of Amici, encourages the court to reject this interpretation because the language of Section 806 does not specifically reference the PCA, civilian prosecution, or the execution of civilian laws. For authority, the argument cites a Congressional Report, *The Posse Comitatus Act and Related Matters: The Use of the Military to Execute Civilian Law*. Jennifer K. Elsea, Cong. Rsch. Serv., R42659. However, if one reads more than the choice quotation relied upon by defense and Amici, their own authority contradicts this argument: "[t]he final and more commonly accepted

8

proposition is that the phrase 'in cases and under circumstances expressly authorized by…Act of Congress'" merely requires that "the statutory exception specifically refer to some form of military assistance." *Id.* Defense's own authority makes clear that an Act of Congress need only reference "some form of military assistance" to create an exception to the PCA. Here, an Act of Congress expressly authorizes the assistance of judge advocates in civilian criminal matters. According to defense's own citation, the statutes cited by the government and relied upon in *Allred* create an exception to the PCA.

### c. Defense's reliance on *Bisonette* is misplaced.

Notably, the *Allred* Court reviewed the opinion in *Bisonette v. Haig*, which Mr. Johnson offers as a polestar. *Bisonette*, however, had nothing to do with the use of JAG attorneys as SAUSAs, so it is unhelpful. *Bisonette v. Haig,* 776 F.2d 1384 (reviewing whether the use of armed military personnel to seize and confine an "occupation" on the Pine Ridge Reservation violated the PCA). The *Allred* Court, however, found it was "not…necessary for this Court to determine whether the rule set out in *Bissonette* or some other form of guideline should be applicable" to this circumstance. *Id.* Rather, the defendants' reliance on *Bisonette* "failed to recognize" the exception to the PCA created by 28 U.S.C. § 543 and 10 U.S.C. § 806(d)(1). *Id.*

Mr. Johnson's reliance on *Bisonette* fails for the same reason. Mr. Johnson argues that the Circuit Court in *Allred* "simply gets the analysis of these statutes wrong." (Def. Reply, p. 6). He criticizes that Court for not improperly engaging in the legislative history, as he is asking this Court to do, against Supreme Court instruction. The government, for its part, does not believe the Fifth Circuit Court of Appeals analyzed the plain text of simple statutes incorrectly. Mr. Johnson's insistence that JAG attorneys can only participate in criminal matters bearing a military nexus is found nowhere in the statutes in question or in any caselaw. The government asks the Court not to invent a principle that does not exist or read language into the law that is not there.

## II.   THE USE OF JAG ATTORNEYS AS SAUSAS IS AN ESTABLISHED PRACTICE THAT IS  NOT PROHIBITED BY THE PCA

The judge advocate lawyers at issue have been detailed to a civil office, fully under the supervision of civil superiors, rendering the PCA inapplicable. Army membership does not by itself trigger the PCA. Instead, to violate the PCA, one must "willfully use[ ] any part of the Army . . . to execute the laws . . ." 18 U.S.C. § 1385. Therefore, the key determination is whether the detailed SAUSAs are being *used* in a military capacity to execute the laws, rather than simply focusing on the SAUSAs affiliation with a Service. Here, the answer is

no. The SAUSAs have been appointed into a civil office and are fully and appropriately supervised by civilian superiors. The only connection to the military is their membership, which is not part of their enforcement of civilian law. However, even if this Court were inclined to determine that the PCA did apply, Congress has expressly authorized such details, which therefore also qualifies their details as an exception to the PCA.

To the extent defense or the Court have any concerns that Mr. Hakes-Rodriguez's participation in this matter is a unique or particularly unprecedented circumstance, perhaps the historical record can allay them.

In 1971, the Office of Legal Counsel examined whether the PCA prohibited the deputization of military personnel to provide security on civilian aircraft—admittedly a different scenario than the one before this Court. Then-Assistant Attorney General William H. Rehnquist determined that "individual members of the Armed Forces assigned to and subject to the exclusive orders of the Secretary of Transportation are not 'any part of the Army or Air Force' within the meaning of the Posse Comitatus Act.," therefore the use of military personnel, provided they are subject to exclusively civilian supervision, does not violate the PCA.  (Sept. 30, 1971).

Similarly, under the Clinton Administration, a group of defendants sought to remove Naval JAG Officer Sundel, acting as a SAUSA, from their

case, but the district court and denied the motion and the Ninth Circuit upheld without analysis. *United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000). In its brief to the Ninth Circuit, filed in June of 1999, the government noted "Indeed, active-duty JAG officers like Sundel are *routinely used* as Special Assistant U.S. Attorneys by U.S. Attorneys offices throughout the nation." *Id.* (Brief of Appellee, 1999 WL 33611861 at *46-7 (June 1, 1999)) (emphasis added).

Given that Clinton-era DOJ attorneys noted the routine use of judge advocates as SAUSAs over 25 years ago, and the OLC opined that the use of military personnel under civilian supervision was not prohibited by the PCA as far back as the 1970s, the government respectfully submits that Mr. Hakes-Rodriguez's appointment as a SAUSA is not an unprecedented erosion of democratic principles; it is rather a continuation of a routine practice that predates this century.

OLC has recently stated that judge advocates currently detailed to the Department of Justice ("DOJ") will not perform any functions of their military position of record; they will operate on a full-time basis within DOJ; and will work exclusively under the supervision of civilian DOJ employees. *See, generally*, October 23, 2025 Memorandum, 2025 WL 3251684. Whatever concerns defense or Amici have about Mr. Hakes-Rodriguez's supervision or

chain of command are unfounded. While detailed as a SAUSA with the United States Attorney's Office, Mr. Hakes-Rodriguez's work is supervised and directed exclusively by the civilian members of that office. He performs the same functions, in the same manner, under the same chain of command as any other attorney who works at the U.S. Attorney's Office, indeed in the same manner as the countless SAUSAs from other agencies who have come and gone from it. Thus "it is unclear in what way he differs from any other zealous prosecutor." *United States v. Dondich*, 460 F. Supp. 849, 853 (N.D.Cal 1978).

## III.   CONCLUSION

Because the appointment of JAG attorneys is expressly excepted from the PCA by unambiguous statute, the United States respectfully requests that the Court deny Mr. Johnson's Motion to Strike Appearance of Government's Counsel.

Dated: March 24, 2026

> Respectfully Submitted,
>
> DANIEL N. ROSEN
> United States Attorney
>
> *s/Michael Hakes-Rodriguez*
> BY: MICHAEL HAKES-RODRIGUEZ
> Special Assistant U.S. Attorney
> KRISTIAN WEIR
> Assistant U.S. Attorney